# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAUN HAMBRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-689-PJC |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Shaun Hambrick ("Hambrick"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Hambrick appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Hambrick was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on June 18, 2009, Hambrick was 28 years old. (R. 18, 95). At the hearing, Hambrick stated that he could not remember his past work experience, other than working briefly at a pipe company where his father worked. (R. 22-23). Hambrick testified that he had never lived alone and had always lived with his mother. (R. 23-24). He did not attend high

school, and he believed that the last grade he attended in school was seventh grade. (R. 24). He had driven his brother's car before, but Hambrick did not consider that he really knew how to drive. (R. 25). He had no intention of trying to get a driver's license, because he did not believe that he could pay attention sufficiently to drive. *Id.*

Hambrick testified that he had no memory of an incident in the medical records that indicated that he had sniffed paint. (R. 28). He believed that he had smoked marijuana in the past, but he testified that he no longer did so at the time of the hearing. *Id.*

Hambrick testified that he had broken his right ankle about ten years earlier. (R. 24, 29). The ankle hurt if he tried to walk for a block or two. (R. 29, 31-32). He estimated he could stand for about three minutes. (R. 32). He could sit for two hours. (R. 33). Sometimes his ankle hurt even when he wasn't standing or walking, and he would prop it up. (32). He took Tylenol, and his ankle bothered him every day. (R. 32-33). While his ankle would affect his ability to lift, he thought he could lift and carry 20 pounds. (R. 30-31).

Hambrick testified that he was being treated at Family & Children's Services for depression, anxiety, and panic attacks. (R. 33). He testified he had these problems for years, but had never been treated for them before going to Family & Children's Services. (R. 34). He took prescription medication, and his mother helped him keep track of his medications. *Id.* Hambrick thought the medications helped for a little while, but he thought his symptoms were coming back, and his physician would prescribe new medications. (R. 35-36). He said he had a panic attack the day before, and his chest hurt, he sweated, and his heart raced. *Id.* He thought that the panic attacks would not prevent him from working, but when they happened, he had to sit down until they stopped. (R. 36).

While he had friends, and had previously had a girlfriend, Hambrick testified that he did not

go out much and did not socialize much. (R. 36-37). He sometimes went to the houses of his siblings. (R. 36-38). He testified that his main activity was staying at home and watching television. (R. 37). While he had watched the news the day of the hearing, he could not testify about what was on the news. *Id.* He said that he did not get along with people and became agitated "real easy." (R. 38-39).

Hambrick testified that he believed he had only been incarcerated once for burglary. (R. 44). He wasn't sure if he had been charged with drug-related offenses. *Id.* He did not believe he had ever been on parole. (R. 44-45). He didn't remember how long he had the tattoos on his arms or how he got them. (R. 45).

Hambrick's mother testified at the hearing that Hambrick had always lived with her, and she didn't think he could live on his own. (R. 39-40). Mrs. Hambrick testified that Hambrick helped with chores, but would often stop due to the pain of his ankle, so she would finish the chores. (R. 40-41). She testified that Hambrick had panic attacks often before he was put on medication, but she could not remember the last panic attack that he had. (R. 41-42).

Records from Saint Francis Hospital indicate that Hambrick was seen on April 12, 1997 with an admission diagnosis of "sniffing paint, neuro deficits." (R. 175-83). Toxicology was positive for cannibis. (R. 180). A computed tomography brain scan showed no significant abnormality. (R. 182). Hambrick was admitted for an MRI at Saint Francis with an admitting diagnosis of encephalopathy[1] on May 20, 1997. (R. 171-73). The results of the MRI showed no significant abnormality. (R. 173).

---

[1]Encephalopathy means "[a]ny dysfunction of the brain." Taber's Cyclopedic Medical Dictionary 636 (17th ed. 1993).

3

The administrative record includes a treatment plan for Hambrick with Family & Children's Services dated December 12, 2008. (R. 215-21). The Axis I[2] diagnoses were major depressive disorder, recurring, with psychotic features, and panic disorder with agoraphobia. (R. 220). There was no Axis II diagnosis. *Id.* Hambrick's global assessment of functioning ("GAF")[3] was stated as 52 for the current and highest in the last year. (R. 221). Hambrick was seen on December 16, 2008 for case management and on February 16, 2009 for pharmacological management. (R. 212-13).

Hambrick was seen by agency consultant Jason M. Leinen, M.D. for a physical examination and report on April 5, 2008. (R. 184-87). The chief complaints were right foot and ankle pain and memory problems. (R. 184). Dr. Leinen's first assessment was right ankle pain from previous fracture repair. (R. 185). Dr. Leinen stated that his examination revealed only a mild limit in range of motion and minimal tenderness to palpation. *Id.* The ankle was stable, but Hambrick walked with a mild limp. *Id.* Dr. Leinen's second assessment was reported memory problems. *Id.* Dr. Leinen did no formal testing, but noted that Hambrick was a poor historian regarding his ankle and his educational background. Dr. Leinen stated that perhaps there was "a mild component of MR," and the undersigned assumes the doctor meant mental retardation. *Id.*

Hambrick was seen by agency consultant Jeri Fritz, Ph.D. for evaluation on April 9, 2008. (R. 188-91). For the presenting complaint, Hambrick said that a previous MRI had shown

---

[2]The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

[3]"The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004), *quoting* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000).

4

"permanent brain loss," but was very unclear about the circumstances. (R. 189). Dr. Fritz administered the Wechsler Adult Intelligence Scale-III test and said that Hambrick was functioning in the borderline range with a verbal IQ of 73 and a performance IQ of 81. (R. 190). Dr. Fritz summarized that Hambrick:

> demonstrated the ability to understand, retain, and follow simple verbal directions. His attention and concentration were within normal limits, such that he would be able to perform simple, repetitive tasks. However, he most likely would benefit from being shown how to perform certain motor tasks and then given multiple opportunities for learning.

(R. 190-91). Dr. Fritz went on to state:

> [Hambrick] would most likely need assistance with job placement and a supportive supervisor or a job coach. [His] prognosis is good if he secures employment commensurate with his skills and abilities.

(R. 191). Dr. Fritz gave no Axis I diagnosis, gave an Axis II diagnosis of borderline intellectual functioning, and assessed Hambrick's current and past year GAF as 75. *Id.* Dr. Fritz thought Hambrick would not be able to manage benefit payments in his interest. (R. 188, 191).

Nonexamining agency consultant Hannah Swallow, Ph.D. completed a Psychiatric Review Technique form on April 10, 2008. (R. 196-209). For category 12.05, mental retardation, Dr. Swallow noted Hambrick's borderline intellectual functioning, and she also noted his borderline intellectual functioning for category 12.09, substance addiction disorders. (R. 200, 204). For the "Paragraph B Criteria,"[4] Dr. Swallow assessed Hambrick with a moderate degree of limitation in

---

[4]There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

5

his activities of daily living, in his social functioning, and in his concentration, persistence or pace, with no episodes of decompensation. (R. 206). In the "Consultant's Notes" portion of the form, Dr. Swallow summarized the report of Dr. Fritz in some detail. (R. 208). She noted that Hambrick had no medical records of treatment for any mental disorders, and she believed that his only limitations resulted from his borderline intellectual functioning. *Id.*

For the Mental Residual Functional Capacity Assessment form, Dr. Swallow found that Hambrick was markedly limited in his ability to understand, remember and carry out detailed instructions, and in his ability to interact appropriately with the general public. (R. 192-93). She found that Hambrick was moderately limited in his ability to sustain an ordinary routine without special supervision, and in his ability to travel in unfamiliar places or to use public transportation. *Id.* Her narrative summary again stated her opinion, based on the report of Dr. Fritz, that Hambrick could work and could understand basic instructions, "although he may need repetition and modeling to successfully learn a new task." (R. 194).

## Procedural History

Hambrick protectively filed an application on March 17, 2008 seeking supplemental security income under Title XVI, 42 U.S.C. §§ 401 *et seq*. (R. 95-100). The application was denied initially and on reconsideration. (R. 53-56, 60-62). A hearing before ALJ Deborah L. Rose was held June 18, 2009 in Tulsa, Oklahoma. (R. 18-48). By decision dated August 5, 2009, the ALJ found that Hambrick was not disabled. (R. 8-17). On September 11, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[5] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported

---

[5] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

At Step One, the ALJ found that Hambrick had not engaged in any substantial gainful activity since his application date. (R. 10). At Step Two, the ALJ found that Hambrick had severe impairments of borderline intellectual functioning, a history of drug and alcohol abuse, reportedly in remission, major depressive disorder, and panic disorder. *Id.* At Step Three, the ALJ found that Hambrick's impairments did not meet a Listing. (R. 10-12).

The ALJ determined that Hambrick had the RFC to do a full range of work at all exertional levels with the following nonexertional limitations: "[H]e is limited to simple routine tasks that are ordinarily associated with unskilled work and he may need repetition and modeling to successfully learn new tasks. He is also somewhat limited in social interactions in that he should avoid interaction with the public in a work setting." (R. 12). At Step Four, the ALJ found that Hambrick had no past relevant work. (R. 16). At Step Five, the ALJ found that there were jobs that Hambrick could perform, taking into account his age, education, work experience, and RFC. *Id.* Therefore, the ALJ found that Hambrick was not disabled from his application date. (R. 17).

**Review**

Hambrick makes a narrow argument that the ALJ's decision is not supported by substantial evidence because he asserts that the ALJ misstated the opinion evidence of Dr. Fritz. Because the undersigned finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements, the ALJ's decision is affirmed.

Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). For his argument that the ALJ's RFC determination is not supported by substantial evidence, Hambrick focuses on one sentence of the report of examining consultant Dr. Fritz: "[Hambrick] would most likely need assistance with job placement and a supportive supervisor or job coach." (R. 191). Because the ALJ said that she gave the greatest weight to Dr. Fritz's report, but she did not include this specific language in her RFC, Hambrick argues that the RFC is not supported by substantial evidence.

The difficulty with Hambrick's argument is that Dr. Fritz's report gave a lot of information about Hambrick, and the summary paragraph had fifteen sentences in it. (R. 190-91). Most of these sentences affirmatively stated that Dr. Fritz believed that Hambrick was capable of working, while limited to simple repetitive tasks. *Id.* The ALJ's task was to formulate an RFC based on the evidence of Dr. Fritz, and she did that, including limitations that Hambrick was limited to simple routine tasks and that "he may need repetition and modeling to successfully learn new tasks." (R. 12).

The ALJ was also guided in her formulation of Hambrick's RFC by the nonexamining consultant, Dr. Swallow. Dr. Swallow gave an extensive summary of the report of Dr. Fritz, but she did not include the language on which Hambrick is focusing, relating to his need for job placement

assistance and a supportive supervisor or job coach. (R. 208). Because the extensive summary of Dr. Swallow makes clear that she read all of Dr. Fritz's report and carefully considered it, one must conclude that she found the one sentence on which Hambrick is focusing to be of less importance than the other information. Dr. Swallow, in formulating her own opinion of Hambrick's RFC, did not ignore the evidence of Dr. Fritz but instead gave her opinion based on that evidence that Hambrick was markedly limited in two areas and moderately limited in two other areas. (R. 192-93). While the ALJ said she gave Dr. Swallow's opinion as a nonexamining consultant less weight than the examining evidence of Dr. Fritz, the ALJ was entitled to consider the opinion of Dr. Swallow as part of the substantial evidence before her. *Cowan v. Astrue*, 552 F.3d 1182, 1186-87 (10th Cir. 2008); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007); *Weaver v. Astrue*, 353 Fed. Appx. 151, 154-55 (10th Cir. 2009) (unpublished).

Further, this is not a case where the ALJ engaged in impermissible "picking and choosing" from Dr. Fritz's report. *See Robinson*, 366 F.3d at 1083 (ALJ "not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"). The ALJ discussed Dr. Fritz's report at length, and included a sentence in her discussion that the report said that it would be "beneficial" for Hambrick to have either a supportive supervisor or a job coach. (R. 14). While Hambrick complains that this is a misstatement of Dr. Fritz's opinion that Hambrick would "most likely need assistance with job placement and a supportive supervisor or a job coach," there is no requirement that an ALJ quote medical reports verbatim, and the ALJ's summary of Dr. Fritz's report was, on the whole, balanced and accurate. *See, e.g., Jeffries v. Social Security Admin.*, 358 Fed. Appx. 25, 30 (10th Cir. 2009) (unpublished) (ALJ's characterization of doctor's reading of MRI as "unremarkable" was not misleading or erroneous when his basic point was well-taken).

The Court is not rejecting Hambrick's argument that a claimant's RFC must allow him to

perform jobs in a competitive environment. While he is correct that the Tenth Circuit has not directly addressed this point in some time, the Tenth Circuit has referred to a claimant's ability to work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Talbot v. Heckler*, 814 F.2d 1456, 1464 (10th Cir. 1987) (citation omitted). Had the RFC included a requirement that Hambrick have a job coach or a supportive supervisor, this may well have barred competitive employment. *See, e.g., Jackson v. Barnhart*, 60 Fed. Appx. 255, 258-60) (10th Cir. 2003) (unpublished) (ALJ did not properly consider or discuss that the claimant's prior work was in a sheltered environment with a job coach). The Court's decision is instead based on the conclusion that the ALJ's decision, including her RFC determination, is supported by substantial evidence. As part of the that conclusion, the Court also determines that the ALJ was not required to single out the one sentence of Dr. Fritz's report referring to job placement assistance, supportive supervision, and a job coach. The ALJ was not required to include that one sentence in her formulation of Hambrick's RFC, given the extensive nature of Dr. Fritz's report, and the ALJ's adequate discussion, consideration, and analysis of that report.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 11th day of February, 2011.

_____
Paul J. Cleary
United States Magistrate Judge